UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINIC BELISARI                          :    CIVIL ACTION
                                          :
   -vs-                                    :    NO.
                                          :
PHILADELPHIA HOUSING ADMINISTRATION: JURY TRIAL DEMAND
TWO JOHN DOES AND TWO JANE DOES

COMPLAINT

**I.**   INTRODUCTION

1.  Plaintiff brings this action pursuant to the Civil Rights Act of 1964, 42  U.S.C. 2000e

(Title VII), et seq., 42 USC 1983 et seq., and the amendments thereto. The action includes

the comparable state law claims. Such as, but not limited to the Pennsylvania  Human

Relations Act ("PHRA" 43 P.S. §§ 951-963, et seq.) and City of Philadelphia Fair Practice

Ordinance (Chapter 9-1000 of the City Code).

2.  Plaintiff seeks all relief the law provides to make-whole the plaintiff for the

employment discrimination in employment, denial of rights under the color of state law.

retaliatory disclosure, creation of false light and publication of defamatory information to

their persons about the plaintiff, and unequal treatment of the law.

3.  The Plaintiff seeks all relief the law and equity permits to make whole, punish, and

compensation for the intentional, negligent, grossly negligent, reckless, deliberate, and

malicious disclosures of the PHA disciplinary information and records to Solebury Twp.,

which disclosure is done by the Does and PHA under color of state law and in reckless

disregard for or deliberate indifference of the plaintiff's rights.  The plaintiff seeks such

dame relief as but not limited to: (a) compensatory and consequential damages (b) an award

1

of reasonable attorney fees and litigation costs. (c) Equitable relief, such as reinstatement or

an injunction directing his return to employment, damages for lost benefits from the

discrimination, with the restoration of seniority and all employment benefits that would have

been earned and accumulated to date, as if the benefit was never used or Plaintiff terminated.

(d) a jury trial of not less than six and two alternatives, and (e) front and back pay (economic

damages, and (f) punitive damages (except for any Title VII, PA HRA, and employment

discriminations liability).

II.     PARTIES

4.   DOMINIC BELISARI is a natural person, causation male, and resides within the

venue of the United States District Court for the Eastern District of Pennsylvania.

5.   PHILADELPHIA HOUSING ADMINISTRATION (PHA hereafter) is an

incorporated municipal public employer and is originally established in 1937.  PHA operates

in the City of Philadelphia as part of the City of Philadelphia; it specifically operates within

the venue of the United States District Court for the Eastern District of Pennsylvania and

operation at 2013 Ridge Ave, Philadelphia, PA 1912. PHA acts through its employees,

agents, and representatives.

6.   DOES (John and Jane) are Persons, as the term is intended and the law defines, for a

42 USC 1983 et seq., civil action; they are believed to reside within the venue of this Court

and Commonwealth of Pennsylvania. They are employees of PHA and acted under color of

state law. Their identities are not fully known to the plaintiff, except that they are known and

believed to be PHA employees that acted within the scope and authority of their employment

with PHA and pursuant to an expressed PHA policy, or practice an custom, which policy

2

PHA attorneys state exist to obtain a protective order in the United States District Court for the E.D. of PA.

## III.    FACTS RELEVANT TO CAUSES OF ACTION

7.  The plaintiff by incorporation repeats all preceding paragraphs here as if repeated verbatim.

8.  The action is for the creation of a hostile work environment, harassment, retaliation, and discrimination in the terms and conditions of employment because of race or gender, and the intentional deprivation of federal rights under color of state law, which rights are secured under federal law rule, regulation and Constitution, First and Fourteenth Amendments.

9.  Plaintiff opposed perceived race bases employment discrimination, opposed and reported, and filed a charge of employment discrimination with the EEOC. The charge is duel filed to include a Charge with the PAHRC and City of Philadelphia. The Charge is filed within the time the law prescribes for the acts and last act that the plaintiff contends is discrimination in the employment.

10. The Plaintiff exhausted agency process and on March 4, 2019, the EEOC issued to the plaintiff a Right to Sue notice/letter. The plaintiff received the Notice/Letter of Right in the mail on or about March 07, 2019. This civil action is initiated or filed in Court within 90-days of the date the plaintiff received the EEOC Right to Sue Notice/Letter.

11. PHA has a policy to keep private and confidential all current and former employee records and information that concern employee investigations and discipline.

12. PHA asserts to the federal court in 2018 and again in 2019 the confidentiality policy.

13. Under the policy, PHA represents it will not release employee information and records unless there is a protective confidentiality agreement or court order.

3

14.  For a disclosure of employee discipline and investigation records in a civil lawsuit before a court, PHA the policy will not release records or the information until there is a confidentiality agreement or protective order. Further, PHA requires that a filing of the information in the case to be under seal. Furthermore that the records not be copied or kept but return to PHA after the finality of the case.

15. On or about May 2019 a male Doe, African American supervisor, sergeant rank, with PHA, went to Solebury Twp. (the Plaintiff's current employer) Bucks County, Pennsylvania. He identified himself as a PHA employee. He disclosed to an on-duty Solebury Twp. employee that the plaintiff was a former PHA police officer and was terminated after an internal investigation. Thereafter, another unknown Doe PHA employee believed working in the PHA Human Resource Department, disclosed and provided a copy of the record(s) for the information that the prior PHA employee had disclosed to Solebury Twp

16. Neither Solebury Twp. nor the  Solebury Twp. the employee had asked the PHA sergeant about the plaintiff or prior PHA employment.

17. PHA and the PHA employees did not seek a confidentiality agreement or protective order from the court before disclosing the information and records. Further, the plaintiff did not authorize PHA and its employees to disclose the information or release the records to Solebury Twp., and its employees.

18. PHA did not enforce the "policy" of non- disclosure for PHA discipline and internal investigation information for former or current PHA employee.

19. As a result of the Does' and PHA disclosures, referenced in the preceding paragraphs the plaintiff lost the employment with Solebury Twp. and suffered economic damages in

excess of One Hundred Thousand Dollars. The plaintiff also suffered personal injuries, such as but not limited to embarrassment, humiliation, and emotional distress.

20. PHA owed the plaintiff a duty of care: A) to secure disciplinary and internal investigation information about the plaintiff and ensure employees knew they could not and did not disclose discipline information and internal investigation records to other unless PHA policy, practice, or custom permits. B) to properly train and supervise its employees about the non-disclosure policy. C) Equally, enforce or apply the non-disclosure policy to races and genders or those engaged in or not engaged in activity protected by the law.

21. PHA breached its duty of care by the Doe PHA employees was in the curse and authority of the PHA employment. The duty of care breached by PHA and the Doe employees was owed to the plaintiff under the PHA policy of non-disclosure.

22. The breach by PHA and the doe employees cause the plaintiff to suffer a stigma to his reputation and the information and records were false. The release of the information and records was not authorized by the law or the plaintiff.

23. As a direct result of the breach of care by PHA and its employees (the Does), the plaintiff sustained economic damages and injury to his person and reputation in the law enforcement field.

24. The plaintiff's damages were foreseeable under the law and to PHA and the Doe employees.

25. Plaintiff was an "employee" of PHA ( as the term "employee" is intended by law, such laws as but not limited to the Civil Rights Act of 1964, Title VII , Pennsylvania  Human Relations Act ("PHRA" 43 P.S. §§ 951-963, et seq.) and City of Philadephia discrimination in employment ordinance).

26. The plaintiff in good faith unequivocally opposed employment discrimination in the employment at PHA. Especially doing such as an employee of PHA and the PHAPD union. The Plaintiff opposed unequal and more severe treatment towards white police department employees than how African-American employees were treated by PHA in the work conditions and the terms of the employment of PHA, for substantially similar conduct.

27. Plaintiff's opposition to employment discrimination was for race discrimination and retaliation. The discrimination was by PHA and its animus supervisors, such as Branville Bard, who was the police chief.

28. The defendant employer (PHA) and Bard, knew of the plaintiff's opposition and that of the PHAPD Union, and other PHA employees, because the Union sued PHA in court and prevailed on the race discrimination claim, other employees, and the Union complained to PHA and its Human Resource Director of discrimination. Employees also complained to PHA's former police chief (Mitchell).

29. PHA knew of the plaintiff's opposition because the plaintiff told PHA and Bard. Further, Bard and PHA knew the plaintiff was associated with other PHAPD employees that opposed perceived employment discrimination because of race. The plaintiff also told PHA through Bard that he was aiding other PHA PD officers in their opposition to race discrimination.

30. Bard mentioned to the plaintiff having knowledge of the opposition and aid to others that oppose employment discrimination and wished for the plaintiff to end his opposition and acid to others. The plaintiff would not and did not discontinue his opposition or aid. He was or had aided PHA employees Jackie Hampshire, Christian Jablonski, Arthur Scena, Bryan Kane, Glen Eskridge, and others.

6

31. Bard thereafter initiated an internal investigation into the plaintiff's work conduct, which investigation concerned a mailing to PHA containing a picture. Bard's investigation resulted in discipline against the plaintiff for a non-specific work rule violation. Bard terminated the plaintiff under the "unspecified work rule. However, under the PHAPD disciplinary rule, policy and customize the work rule violation did not arise to conduct permitting termination.

32. At the time the plaintiff was terminated, Bard did not afford the plaintiff an opportunity to speak on the termination before it was imposed.

33. The Plaintiff through the Collective Bargaining Process grieved his termination, and while awaiting an arbitration date, Bard commenced contract talks with the Union. Bard engaged in new contract talks with the PHAPD Union.

34. Bard on or about April 20, 2017, during contract talks, told union officers that the plaintiff's grievance for the termination had to be discontinued and if not there would not be further new contract talks. Thereafter, the Plaintiff' grievance was ended and no arbitration hearing held for the termination. The plaintiff then obtained employment as a police officer with Solebury Twp, Bucks County, Pennsylvania

35. Bard following the termination of the plaintiff's grievance then provided to the PHAPD Union President a better wage and a waiver of PHA's requirement that PHA employees reside in the City to maintain employment.

IV.    CAUSES OF ACTION

## COUNT I
### 42 USC 1983
### Constitutional Activity - First & Fourteenth Amendment

36. The plaintiff by incorporation repeats all the preceding paragraphs here and as though each was repeated verbatim.

37. The plaintiff held a good reputation in the general and police community.

38. The plaintiff reported employment discrimination activity at PHA to PHA and the EEOC.

39. Reporting discrimination to federal agencies is not the duty of a PHA employee.

40. Reporting to the EEOC employment discrimination activity, and associating with a Union and other Union members, such as to oppose employment activity, is recognized as protected activity under the First Amendment for Free Speech and Association.[1]

41. PHA in court proceedings against PHA by white former employees Hampshire (Female) and Jablonski (Male refused by policy to release disciplinary information and internal investigation records concerning African American employees (former and current).

42. In the Hampshire/Jablonski case, PHA asserted a privacy interest existed to protect the current and former PHA employees from harm by disclosure of disciplinary and internal information.

---

[1] Abdul-Latif v. County of Lancaster, 90 F.Supp.2d 517 121 (U.S. D. Ct, E.D. Pa. 2014) 9 Fair Empl.Prac.Cas. (BNA) 533. Also, Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265 (3d Cir.) 2007. 2007 WL 176066. "disinclination to become involved with [protected activity] is protected by the First Amendment." Further, *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all...".

43. PHA would not disclose records and internal investigation information concerning PHA former employee Baylis (AA/F) and then current PHA employee Jerome (AA/M) until a court order directed disclosure and a protective order protected the records and information.

44. PHA and its employees in or about May 2019 freely released substantially similar information and records about the plaintiff (W/M) to Solebury Twp. and its employees without a court order, confidentiality agreement, or authorization, release or consent from the plaintiff.

45. PHA in another civil action, in or about April and May 2019 would not release disciplinary and internal information involving African American former employee Jerome and African American female Baylis until ordered by the court or either it obtained a confidentiality agreement or protective order over the information and records.

46. PHA for the Plaintiff, a white male, release sustainably similar information about him and did not seek a confidentiality agreement, court order, protective order, consent, release or authorization from the plaintiff.

47. PHA and the Does, in the release of the information and records about the plaintiff, treated the plaintiff unequally and because of his race, gender, affiliation, and Free Speech and Petition Clause( First Amendment) activity.

48. PHA and the does by policy, practice or custom intentionally deprive the plaintiff of liberty, reputation, and meaningful or adequate due process of law; they did so arbitrarily, capriciously, and in a manner that shocks the conscience.

49. PHA and the Does deprived the plaintiff of his First and Fourteenth Amendment rights to Reputation Liberty, Freedom from Retaliation for Free Speech and Petition Clause activity, and Procedural and Substantive Due Process

9

50. The Plaintiff spoke out and affiliated in a Union, with its members, to speak out and oppose matters of public concern, such as illegal practices in labor and employment. Such as PHA, a public employer, and its managers to the discrimination through a policy, practice or custom and to condoned or acquiesced to illegal employment discrimination and denial of equal rights under the law because of race.

51. The Defendant PHA and Does at all times knew of the Plaintiff's First Amendment activity, Union and coworker association, and affiliation. Further known was his aid to others to oppose employment discrimination because he was open to speak and act about it and his name was used and repeated, thus known, by PHA, for the activity; his name also appeared in records held by PHA.

52. The Does knew of the plaintiff's activities that are described in this pleading. They knew by their own knowledge about the plaintiff's race and gender because they saw and spoke with him.

53. The Does' disclosure to Solebury Twp. the plaintiff's PHA employment, disciplinary information, and an internal investigation, which disclosures are substantially motived because of the plaintiff's race, gender, and First Amendment association, affiliation, and Speech, and Petition Clause activities.

54. The Does' disclosure to Solebury Twp. of the plaintiff's PHA employment disciplinary information and records is substantially motivated because of the Plaintiff's EEOC charge of employment discrimination, and to pursue the Charge, participate in the EEOC investigation on the Charge, and to pursue the Right-to-Sue notice on the Charge into court as a federal lawsuit.

55. The disclosure by the Does and PHA, of the PHA disciplinary information, to Solebury Twp. is a restraint on free speech and petition clause activity, or act to chill such.

56. Plaintiff successfully completed the hiring process with PHA and Solebury Twp. and became a sworn uniformed employee or police officer with each employer and its Police Department. Thereafter, Plaintiff became a covered employee under a collective bargaining agreement with PHA and a PAHPD union member. The plaintiff became a union representative, spokesperson, and the President, which position was known to PHA, Bard, and supervisors of PHA.

57. Plaintiff, while employed with PHA and Solebury Twp. was qualified for the employment and, under Commonwealth of Pennsylvania law, each position as a police officer, viz the plaintiff was verified as a municipal police officer by the Commonwealth of Pennsylvania Municipal  Police Officer Education & Training Commission (MPOETC) under Act 120, (42 Pa C. S. §8951 et seq.).

58. The CBA between PHA and the PHAPD union members, which included Plaintiff, provides to the effect, *inter alia*, that employment cannot be ended, affected by discipline, or lost, nor can grade or wages be decreased without good cause existing and due process provided as required by law.

59. Plaintiff enjoyed a property interest in the PHA and Solebury Twp. employment, wages, and benefits attendant to the employment. The property interest was secured under the CBA or the Law, thus; the Fourteenth Amendment of the United States Constitution, law, rule, or regulation.

60. Plaintiff under the First Amendments of the United States Constitution, law, rule or regulation enjoyed protection from retaliation for making and participating in and aiding

others to oppose employment discrimination, for union activities and affiliations, and his own grievance by opposition to employment discrimination in a court lawsuit.

61. Plaintiff under the Fourteenth Amendment the United States Constitution, 1964 Civil Rights Act and its amendment, law, rule or regulation (thus 42 USC 1981 and 1983) enjoyed equal protection under the law and to be free from unequal treatment because of race or gender (whether done under color of state law or privately).

62. The Does intentional, recklessly, and with reckless disregard for or deliberate indifference of rights, under color of state law and/ or for themselves, acted together and under PHA policy, custom, or practice to deprive rights and retaliate against current and former employees that exercised federal rights, deprived the plaintiff of liberty in employment, equal protection of the law because of his race and gender, and to freedom from retaliation for free speech, and petition clause activity; they deprived the plaintiff of procedural and substantive due process of law, in violation of the First and Fourteenth Amendments.

### COUNT II
### Title VII 42 USC 2000e
### Employment Discrimination
### Retaliation- Harassment/Hostile Work Environment

63. The plaintiff by incorporation repeats all the preceding paragraphs here and as though each was repeated verbatim.

64. Under Title VII (42 USC 2000e), the PA HRC, and the City of Philadelphia Fair Practice (in employment ) law, the plaintiff enjoyed protection from a hostile work environment, harassment, gender and race discrimination in the terms and conditions of

employment, and from retaliation for participating in and aiding others in the opposition of employment discrimination.

65. PHA is a public employer and obtains from the authority derived from the law, viz, Federal and Commonwealth of PA. PHA as an employer is to obey anti-discrimination law in employment, such as Title VUU (42 USC 2000e, Pa. Human Relations Act, and the City of Philadelphia Fair Practice Ordinance (Chapter 9-1100 of the City Code).

66. PHA is an "employer" and Person as the term is intended by the law. Such law as, but not limited to the Civil Rights Act of 1964, Title VII, 42 USC 2000e, the Pennsylvania Human Relations Act ("PHRA" 43 P.S. §§ 951-963, et seq.),  the City of Philadelphia's Fair Practice (in employment) ordinance and 42 USC 2918 et seq.

67. PHA is the nation's fourth largest public housing authority in the United States and has more 14,000 housing units in the City of Philadelphia, serving nearly 80,000 Philadelphians.

68.  PHA employs 50 or more employees.

69. PHA uses and is known to use the name, and to operate as, "the City of Philadelphia Housing Administration."

70. PHA, in conjunction with the City of Philadelphia, acts as an agency of the City of Philadelphia, Pennsylvania, for Housing and the United States Department of Housing and Urban Development.

71. PHA operates a uniformed police force, which force also has non-uniformed sworn support employees. PHA police personnel as an employment benefit have the ability to "laterally" transfer (move) to other employment or position within the City of Philadelphia.

13

Such as, to the City's Police Department, The transfer is done without loss of pension and/or employment seniority that may have accumulated while with PHA.

72. PHA has an employment policy that concerns the duty to not disseminate records and information and to afford a meaningful opportunity to an employee to speak on discipline before it is imposed. Including in the policy is to provide to the employee before the discipline is imposed the facts relied on for discipline.

73. PHA has a policy to provide employees to be disciplined with both meaningful pre and post discipline due process.

74. On or about 2016, PHA hired defendant Bard as the police chief and/or Public Safety Director of the PHA Police Department (hereafter PHAPD).

75. The policy described in paragraphs 72 and 73 were not changed upon or after Bard was hired.

76. At the time of Bard's hire, the Plaintiff was employed with PHA as a police officer and was a member of the police union.

77. Bard is an African American male.

78. Upon Bards hire at PHA, he "inspected" PHA policies and the PHAPD rank-and-file (officers).

79. Bard, during one inspection of PHA officers, said words to the effect that "there needs to be more color here" (speaking of the race for rank-and-file in the police department).

80. At the time when Bard made the comment more color was needed, and discipline increased against whites, PHA, through its Human Resource Director, Joanna Strauss aware, viz had been told by PHA Police Inspector Glen Eskridge and Police Chief Mitchell, that the PHA disciplinary process was being used by African American police supervisors to

disproportionally discipline white PHA police officers, for conduct African American PHA police officers committed but were either not disciplined or received less severe punishment than white PHA police officers.

81. The plaintiff while employed at PHA and Solebury Twp. had satisfactory employment performance and to the extent created, he too had satisfactory performance evaluations.

82. The Plaintiff at PHA did not have a significant disciplinary history nor was he told his performance with PHA or at Solebury was in need of correction or that he required more training or increased supervision to continue employment.

83. Historically at PHA, white PHA police officers were subjected to disproportional (more severe) discipline, including termination the African-American employees, which in the 1990 result in a federal lawsuit against PHA by white employees; the lawsuit for reverse race discrimination ended with a verdict that was for the white officers and against PHA. The practice continued and did so following Bard's hiring.

84. PHA has not taken insufficient steps to actually stop and end the discriminatory practice and policy. Rather, PHA has continued the practices and policies even though continua race bases discrimination within the police department was reported to the PHA Human Resources Department

85. PHA by a pattern of antagonism through its supervisors, Decision-makers, such as Bard and Marker, work rules and policies used discipline against the employees, which include the plaintiff, to reduce employment for whites and increase employment opportunities for non-white.

15

86. The discipline imposed on white was for substantially similar conduct done by African American PHA police officers. However, for the African-American officers, PHA did not impose discipline or disproportionally imposed more server discipline against whites, which included the plaintiff.

87. African-American and female PHAPD employees, because of race and gender, are treated more favorably than whites, for substantially similar conduct. The whites are terminated whereas the African-Americans are not until or unless they aid the whites to oppose employment discrimination.

88. For example, white PHA officers Hampshire (F) and Jablonski (M) were involved in a vehicle pursuit. PHA suspended them. Upon return, PHA removed their police authority and them from patrol duties. Thereafter they were investigated and terminated for the vehicle pursuit.  However, with the same Decision-Makers for PHA, African American male police office Moses Jerome and African American female Baylis, who were involved in a vehicle pursuit in violation of PHA work rule policy, were neither suspended nor removed from patrol duties.

89. Officer Jerome later came forward to become a witness for Hampshire and Jablonski in the race and gender discrimination lawsuit against PHA.

90. One day after Mr. Jerome was disclosed to PHA as a witness for Hampshire and Jablonski, PHA terminated Jerome; Baylis did not aid Hampshire and Jablonski and she received no discipline.

91. Bard terminated the plaintiff without providing pre-disciplinary due process under the PHA policy; PHA did not discipline Bard.

92. In addition,  African-American male PHA police sergeant Carlo McKinnie printed out and hung up pictures on the back of a PHA computer in the PHAPD and work area. The posting depicted suspects from the "murder she wrote" television series. The posting included a picture of a PHA female employee named Nanette Jordan, who opposed race and gender discrimination at PHA. The posting included a newspaper article about an armed robbery/homicide. The inference was  PHA sergeant; Nanette Jordan (female) was involved in the robbery with her husband as the get-a-way driver. Further, that she murdered him and was a murderer that belonged in jail.

93. Jordan filed a complaint with the police chief and Human Resources about the posting by Sgt. McKinnie. However, PHA took no action that stopped McKinnie. PHA determined that McKinnie's actions were "unfounded" although the posting existed and was openly displayed, obvious, there were no less than two witnesses that saw the posting, and the posting appeared on the computer that McKinnie used.

94.  PHA and Bard terminated the plaintiff for a picture he allegedly mailed to another PHA employee. The mailing contained no fighting words or words that would and did cause immediate lawless conduct.

95. The race of the plaintiff is the only difference between the plaintiff's conduct that PHA asserts is done by the plaintiff and the conduct of McKinnie.

96. In addition to the plaintiff, the Union, its members, and Jordon opposing employment discrimination by PHA, PHA Inspector Glenn Eskridge and police Chief Mitchell each unequivocally opposed to PHA race discrimination against white PHA office by PHAPD African-American supervisors; they reported disproportional use of discipline against white offices by African-American supervisors, thus illegal employment discrimination.

17

97. Thereafter, PHA terminated Mitchell and then Human Resource Director Joanna

Strauss investigated and demoted Eskridge from Inspector to Sergeant and reduced his pay.

98.  PHA through supervisor Police Chief Bard harassed and created a hostile work

environment for the plaintiff. The Plaintiff at PHA and Solebury Twp was retaliated against

by PHA (and the Does aiding PHA) for providing aid to and participation in the position to

employment discrimination by other employees and the Union.

99.  The plaintiff was treated differently in the terms and condition of employment, and

too because of race and gender, in violation of Title VII (42 USC 2000e) and the PHRA (43

P.S. § 951-963  et  seq.) and the City of Phialpehoia Fair Practice (in employment) Law,  and

substantially motivated by the  animus of the plaintiff's race, gender, and aid or participation,

by

- a-  Not bargains in good faith during the collective barging process,

- b-  initiating a disciplinary investigation

- c-  Terminating the plaintiff.

- d-  Offering and providing a reward to other PHA employees to continue, and advance
     the PHA discriminatory policy and practices

100.        The Plaintiff was termination from employment with PHA and Solebury Twp.

The termination caused the plaintiff to sustained economic damages in excess of $800,000

dollars and personal injuries; the plaintiff suffered,  but not limited to, mental distress and

anguish, humiliation, embarrassment, and loss of enjoyment of society and the enjoyment of

life. Plaintiff suffered sleep, eating, and mood swings, upset stomach, and hair loss, which

remain to date.

101.     The termination from employment with PHA and Solebury Twp caused unequal treatment, and a denial of rights, and is employment discrimination, is;

102.     Defendant PHA discriminated against the plaintiff because of his protected class memberships in the white race and male gender classification, and for First Amendment activities.

103.     Defendant Bard for himself and PHA impose conditions, threats, or coercion against Plaintiff.

104.     PHA has a policy and/or practice or custom that is to condone, promote, acquiesces to, and permit discrimination in employment, unequal treatment under the law, and the different terms and conditions of employment because of race and/or sex; further, to retaliate against those that engage in activity protected by the law or known as whistleblowers. Further, to create an open and obvious hostile work environment and harass current and former employee in violation of Title VII (42 U.S.C. 2000(e) et seq.) and the PHRA.

105.     PHA as an employer, municipal person, and through by the above acts through its employees, supervisors, and decision–makers, such as Bard, Strauss, and the Does, discriminated against the plaintiff in the terms and conditions of employment in violation of 42 USC 2000e (Title VII).

106.     The plaintiff reported and participated with his Union and PAH coworker to oppose race discrimination at PHA by African-American supervisors towards whites. The plaintiff held an objectively reasonable belief, in good faith, that the activity he opposes was unlawful under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

107.    Plaintiff was subjected to severe and adverse employment action, such as intimidating, hostile, or offensive conduct, to a reasonable person, and a hostile work environment that was created, condoned and continued by management. Such conduct as done by PHA Police Chief Bard and Inspector Marker. Who by manner and design was to make an employee quit and done in retaliation for opposing perceived employment or aiding others to do it, and for Union activity that opposed the employment discrimination.

108.    The conduct was repeated, open, obvious, and severe. Such acts of harassment and intimidation included internal investigations, discipline, termination, denial, and opposition to statutory unemployment benefits, release of disciplinary records to a replacement employer, denial of a commendation for a qualified disability, subjected to unwarranted sick checks when policy did not permit. Viz, the plaintiff had approximately 200 hours of sick time and an attending physician's note, which facts and circumstance under PHA policy preclude sick checking an employee.

109.    In addition to the sick check, the Plaintiff was transferred to a different squad and assigned to work in the operations/records management room instead of out on patrol.

110.    The substantial motivating reason for the transfer and reassignment is the plaintiff's speech to make union complaints, of which invl\dued opposing discipline because of race. Viz, against white officers disciplined by African-American supervisors, because of race.

111.    The aforementioned conduct was open and obvious and was unwelcomed harassing conduct done because of the plaintiff's race, color, sex, and protected activity to oppose employment discrimination.

112.     PHA continued the aforementioned harassment against the plaintiff and continued it to the plaintiff's employment with Solebury Twp by releasing PAH records and disciplinary information, which conduct created a hostile work environment at Solburty Two and was further harassment.

113.     The Harassment was 1) enduring offensive conduct that altered the condition of continued employment, and was severe or pervasive conduct to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. The harassment against the plaintiff was in retaliation for participating in an investigation, proceeding, or lawsuit under the anti-discrimination in employment laws; or opposing employment practices by others.

114.     The harasser was the plaintiff's supervisor, viz a Does Marker and Bransville Bard, Marker and Bard at the time was the PHAPD police chief or acting police chief. They were the highest-ranking supervisors and person over the plaintiff police employment that had policy and decision making authority over the plaintiff's employment.

115.     PHA, through it supervisors, such as Bard, Strauss, and the Does, under a policy practice, or custom to discriminate in employment because of race, gender or a protected activity, created a hostile work environment for the Plaintiff and to harass in violation of 42 USC 2000e (Title VII).

116.     The Plaintiff filed a charge of employment discrimination with the EEOC and duel filed the Charge, which Bard and Marker knew. The charge identified by name Nard as the PHA PD Police Chief. The scope of the Charge was employment discrimination because of protected activity (retaliation) race, gender, retaliation, creation of a hostile work environment and harassment.

117.     Plaintiff's discrimination charge is made within the time allowed by law to make a charge with the EEOC and/or PA HRC and City of Philadelphia Fair Practice (in Employment) Law.

118.     The plaintiff spoke with PHA and its Supervisors, such as Bard, about discipline imposed on PHAPD union members and discrimination allegation made against PHA, Bard, and PHA & PHAPD officials and supervisors by PHAPD union members.

119.     Liability on PHA is based from the actions of supervisors, such as Bard and Strauss, and Sgt. Evans, who had authority over Plaintiff employment pay, terms and conditions, and whose police chief (Bard), Director of Human Resources (Strauss), and Sgt. Evans, (street supervisor) bound the PHAPD (Department) with their actual or apparent authority.

## COUNT II
### Title VII - Employment Gender/Race Discrimination

120.     The plaintiff by incorporation repeats all the preceding paragraphs here and as though each was repeated verbatim.

121. PHA, though the actions of supervisor Bard, Marker, the Does, and the policy practice, or custom to discriminate in employment, which they aided and abetted, because of Plaintiff protected class, such as but not limited to race and gender, treated Plaintiff differently in the terms or conditions of employment. The treatment in violation of 42 USC 2000e (Title VII) harassed the Plaintiff and created a hostile work environment, which was regular or pervasive.

## COUNT III
### STATE CLAIMS
### PHRA (43 P.S.§ 951-963 et seq.) & City of Philadelphia Fair Practice (in Employment ) City Code Chapter 9-1100

22

PHRA Employment Discrimination - Aider and Abettor Liability
Negligence & Intentional Infliction of Emotional distress

122.     Plaintiff by incorporation repeats all preceding paragraphs here as if stated verbatim.

123.     PHA as an employer acted through the actions of Bar, the Does, and its supervisors and managers.

124.     Bard, and the Does, as supervisors or person with decision making authority for PHA aided and abetted PHA and its policy to discriminate against employees, including the Plaintiff, in the terms or conditions of the employment because of gender, race, protected activity and/or protected class membership, in violation of state law, such as 43 P.S.§ 951-963  et  seq. and the Fair Practice law under the City Code.

125.     PHA, through the actions of Bard, the Does, it supervisors, and managers, adopted a practice, policy, or custom to discriminate in employment because of race, gender or a protected activity; to create a hostile work environment, harass, and retaliate in violation of the law.  Further to treat less favorably current and former employees, such as the Plaintiff, in violation of the law and to include but not limited to 43 P.S.§ 951-963  et  seq., Title VII., the Fair Practice law under the City Code and laws for negligence and rights to Pennsylvania Citizens.

PRAYER FOR RELIEF.

WHEREFORE, Plaintiff prays the Court to enter judgment for the Plaintiff and against PHA and to hold the PHA liable, award the Plaintiff all relief the law permits and to include such relief as but not limited to make-whole relief, compensatory and consequential

damages, front and back pay, reinstatement, rank, seniority, reasonable attorney fees and

litigation costs, out of pocket expenses, and punitive damages when permitted by the law.

Date May 31, 2019

Respectfully submitted,

/s/

Brian M Puricelli, Esquire
Attorney for the Plaintiff